DAVID BROWN *v.* ARTHUR HEBB

[No. 21, October Term, 1934.]

536

*Decided November 22nd, 1934.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Myer Rosenbush,* for the appellant.

*Eugene Schonfield,* with whom were *Bernard E. Stern* and *Schonfield & Schonfield* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

Dr. Arthur Hebb, a surgeon specializing in procrology or rectal surgery, operated on David Brown, at the Church Home and Infirmary in Baltimore on December 21st, 1928, for an internal anal fistula. Brown remained in the hospital for several days, and after his return to his home visited Dr. Hebb's office, where his wound was dressed and treated daily, except for Saturdays and Sundays, for two months, and for a month after that he went every other day. Following that treatment, Brown received a bill from Dr. Hebb for $1,500, which he refused to pay on the ground that it was excessive. On September 1st, 1931, he received from Robert Coughlin, Jr., the following letter:

> "I represent Dr. Arthur Hebb who operated on you some two years ago for a fistula. Dr. Hebb's bill of $1,500.00 is as yet unpaid and I have instructions to sue immediately if it is not taken care of. Will you please let me hear from you so I may know how to proceed."

To that letter Coughlin received the following reply from Messrs. Rosenbush & Bernstein, a firm of lawyers practicing in Baltimore City:

"In Re: Dr. Arthur Hebb vs. David Brown.

Dear Mr. Coughlin: Your letter of September 1st, addressed to Mr. David Brown in the above connection has been referred to us.

On November 8th, 1928, Mr. Brown received a letter in the same connection and referred it to us, and we wrote as follows:

'November 11, 1929.

Attention of Mr. Wm. J. Murray, Mgr., Mercantile Collection Agency, Lexington Bldg., City.

Re: Dr. Hebb vs. David Brown.

Gentlemen: We are in receipt of yours of November 8th in the above connection. Mr. Brown authorizes us to make an offer of $300 in full settlement and compromise of the above claim.

Very truly yours,

Rosenbush & Bernstein

By ——————

R:MC'

Mr. Brown is ready and willing to pay that amount now, and he informs me that his information is the offer is a very liberal one for the services rendered.

Very truly yours,

MR:SF        Rosenbush & Bernstein."

On September 9th, 1931, Coughlin replied inviting further negotiations, and on September 11th, 1931, Rosenbush & Bernstein answered declining to add anything to what they had previously said.

On October 5th, 1933, Hebb brought this action against Brown on the common counts in assumpsit to recover the $1,500 which he claimed for his services, and to the declaration Brown pleaded the general issue and limitations. The plaintiff joined issue on the general issue plea, and traversed the plea of limitations. The usual practice is to reply a new promise (*Evans' Harris' En-*

*tries* 155; *Carey's Forms* 156, 37 *C. J.* 1237), but as no point was made of the form in which the defense was presented, and as there is some precedent for it (*Bullen & Leake, Precedents of Pleadings* 644,) it will be assumed that the issue as to whether the defendant did within three years before the suit promise to pay the plaintiff's claim was properly presented. The case, which was tried before the court sitting as a jury, resulted in a verdict and judgment for the plaintiff, and from that judgment this appeal was taken.

In the course of the trial the appellant reserved two exceptions to rulings on evidence, and two to the rulings of the court in respect to his prayers. The plaintiff was asked on cross-examination whether he classified an operation of "fistula in ano" as a major or minor operation, and he replied: "Well, I think next to cancer of the rectum, which is one of the biggest operations in the annals of surgery, that fistula in ano is one of the biggest operations we have to do." A motion to strike out that answer as not responsive was overruled. We find no error in that ruling, which is the subject of the first exception. The answer, while apparently not what counsel expected, was nevertheless directly responsive to his question.

The second exception deals with the action of the court in overruling a motion to strike out the letters quoted above, which had been admitted subject to exception. That ruling was also free from error. The letters were both material and relevant to the major issue upon which the case was tried, whether within three years before the suit defendant had admitted a present subsisting indebtedness to the plaintiff and, for reasons stated *infra,* were properly admitted.

At the close of the plaintiff's case defendant offered a prayer that there was no evidence in the case legally sufficient to remove the bar of the statute of limitations, and that therefore the verdict of the court sitting as a jury should be for the defendant. The prayer was refused and the third exception relates to that ruling. But since the defendant then offered evidence, he waived any

objection he may have had to it (cases collected in *Carter's Digest*, sec. 382, Title Appeal), and that exception need not be further considered.

At the close of the whole case defendant reoffered that prayer and three additional prayers numbered two, three, and four, of which the second was granted and the others refused. Those rulings are the subject of the fourth exception.

The plaintiff in the course of his testimony had said that he had, four or five days before, examined the hospital records and discovered that the diagnosis noted on the record by the hospital interne was incomplete in that it described the operation as for a "fistula in ano," whereas to be complete it should have described it as for a "blind internal fistula in ano," and that witness completed the diagnosis by adding the words "blind internal." There was testimony tending to prove that an operation for an external fistula was simpler and less dangerous than one for a blind internal fistula, and inferentially less expensive, and defendant's third and fourth prayers were predicated upon the theory that, since the hospital records described merely a "fistula in ano," the court was authorized to find that the operation was for a "fistula in ano," and that, if it did so find, no evidence of the value of such a service having been offered, it was required to return a verdict for the defendant. The objections to that predicate are obvious. First, there is no necessary conflict between the terms "fistula in ano" and "blind internal fistula in ano," other than that the one term is generic and the other specific, the one complete and the other incomplete, the general description includes the specific, just as the term "water" would include fresh water, salt water, rain water, lime water, and the like. Second, entirely apart from the opinion evidence as to a reasonable charge for an operation for a blind internal fistula in ano, there was evidence of the time, labor, care, and skill given by the plaintiff in connection with defendant's ailment, and of the plaintiff's standing and skill as a surgeon, and from that

evidence the court as a jury was authorized, notwithstanding the absence of any opinion evidence of the value of the services, to appraise them itself. *Sedgwick on Damages,* sec. 664a (9th Ed.) ; 28 R. C. L. 670.

The substantial question presented by the appeal was raised by the refusal of the defendant's first prayer, in which he asked the court to rule that there was in the case no evidence legally sufficient to remove the bar of limitations, and that question turns upon the construction and effect to be given the letter from Rosenbush & Bernstein to Coughlin dated September 3rd, 1931. The cause of action accrued early in 1929, the action was commenced on October 5th, 1933, and the action was barred unless within three years before the suit the defendant had expressly or impliedly promised to pay the debt. Apart from that letter there was no evidence of any kind of a new promise. The letter was written in an effort to compromise the claim, was not signed by the defendant but by his attorneys, and contained no express promise to pay the amount demanded by the plaintiff. Whether it was evidence of a new promise depended therefore upon these factors, (1) whether the statement that "Mr. Brown is ready and willing to pay that amount," meaning the $300 referred to in the letter from Rosenbush & Bernstein dated November 11th, 1929, "now, and he informs me that his information is the offer is a very liberal one for the services rendered," is an acknowledgment of a present subsisting indebtedness; (2) whether that statement was so far integrated with the attempt to compromise the claim as to make it inadmissible as evidence of a new promise; and (3) whether, assuming that it was otherwise admissible, Rosenbush & Bernstein were authorized to bind the defendant by such an admission. The langauge quoted is undoubtedly an admission that Hebb had rendered service; that he had not been paid for the service; that Brown was willing to pay him $300 in full settlement for such service but no more; that Hebb claimed $1,500 for the service, but that Brown definitely refused to pay that amount.

A concise and comprehensive statement of the rule defining the elements and effect of an admission or an acknowledgment necessary to constitute a new promise sufficient to take a case out of the statute of limitations is to be found in *Wilmer v. Gaither*, 68 Md. 345, 12 A. 8, 10, 253, quoted with approval in *Taylor v. Commrs.*, 132 Md. 420, 104 A. 475, where it is said: "In this state, as in England, there must be shown to exist one of three things to take a case out of the operation of the statute of limitations: First, an admission or acknowledgment by the debtor of a subsisting debt, from which a promise to pay may be implied; secondly, an unconditional promise to pay the debt; or, thirdly, a conditional promise to pay the debt, and evidence which shows that the condition has been performed or gratified." In *Knight v. Knight*, 155 Md. 246, 141 A. 706, 708, the court, quoting from *Oliver v. Gray*, 1 H. & G. 204, said that such an admission "must not be accompanied by any qualifications or declarations which, if true, would exempt the party from a moral obligation to discharge it." And, in *Higdon v. Stewart*, 17 Md. 111, 112: "As we have said, the declaration or acknowledgment must be taken as a whole, and it cannot be disproved as to any part; offered by the plaintiff as his proof, he will not be allowed to adopt the admission and reject the qualification. * * * But it is said his denial was not unqualified; that he admitted fifty dollars to be due, which opened the whole account between them. It is true, that where a party admits his indebtedness generally, a promise to pay a particular sum need not be proved. But here the admission is limited to a precise amount; is not the party offering the admission bound by the declaration as made? He cannot disprove it by showing he owed more, nor can he segregate one part from the other. He said he did not think he owed any thing; again, that he did not think he owed him more than fifty dollars; which we take to mean this, that he thought he owed him nothing, but if he owed any thing, it was not more than the sum stated. If we say that, under this loose conversation, the plaintiff may recover a

thousand or more dollars, if the plaintiff can prove that such as originally due, would it not be turning the man's words into something that he did not say, by construing his admission, qualified as it was, into a promise to pay a much larger amount, which his other remarks clearly, as we think, show he deemed an unjust demand? It is of no consequence that he did not speak confidently of his owing nothing, but merely expressed his opinion. The plaintiff offers these opinions, and cannot discard them from consideration any more than the other parts of the conversation." 37 *C. J.* 1142.

Many of the cases in which varying phraseology has been held sufficient to constitute a new promise are collected in an elaborate opinion written by Judge Pattison in *Knight v. Knight, supra.* Cases in which the phraseology was held insufficient to remove the bar are *Higdon v. Stewart, supra,* where the proof was that Higdon, the defendant, had said "that he and Stewart never had had any settlement, and that he did not think he owed Mr. Stewart any thing, that he had receipts for all the money he had paid Mr. Stewart, except for one hundred dollars, but he did not know how much he had paid him, he thought he had paid him six or seven hundred dollars, but the books or receipts would show; sometime afterwards, Mr. Stone called his attention to the matter again, when he said he did not think he owed Mr. Stewart more than fifty dollars"; *Frey v. Kirk,* 4 G. & J. 509, where it appeared that "a few days before the commencement of the suit, the defendant was shown the note, and asked if it was his, to which he replied, 'yes,' and being then asked what arrangement he could make for its payment, replied, as regards that he could not say; being then informed that suit was to be brought, he again replied, 'you may save yourself the trouble, as I have taken the benefit of the insolvent laws' "; *Oliver v. Gray,* 1 H. & G. 206, 207, where it was proved that the defendant, who had executed a deed of trust for the benefit of certain creditors, excluding the plaintiff, said "that he regretted that the plaintiff was

excluded from the said deed of trust, and wished he had been allowed to come in for his claim under the said deed; but always added, that he did not consider that he was indebted to the plaintiff, because the plaintiff had it in his power to have saved himself, with the securities received from William Taylor, and ought not, therefore, to have looked to him for the money. * * * The plaintiff further offered in evidence, that he was not paid by the securities referred to in the preceding conversation, and that William Taylor was still indebted to the plaintiff in a large sum of money, although the ship Orozimbo, hereinafter mentioned, had been sold to the best advantage"; *Stockett v. Sasscer*, 8 Md. 374, in which the plaintiff claimed a balance due him of $600, and the defendant said "that he did not owe said balance, and that upon a just settlement the plaintiff was in his debt, and observed to the plaintiff, why do you not sue me? to which plaintiff replied, it was useless to sue as the account was out of date; the defendant answered, no time nor limitations was to him a bar to a just debt."

Applying the analogies in these cases, and the cases cited in *Knight v. Knight, supra,* in our opinion the statement quoted above must be construed as an admission of a present subsisting indebtedness, but the admission was limited to the precise sum of $300. *Higdon v. Stewart, supra.* In that case a similar admission was held not sufficient to remove the bar for any amount, but the reason for that conclusion was, as the court construed his language, that when Higdon said "he did not think he owed Mr. Stewart more than fifty dollars," he meant that he thought that he owed Stewart nothing. But in this case, when Rosenbush & Bernstein wrote that Brown's information was that the offer of $300 was a "very liberal one for the services rendered," they undoubtedly meant that Brown did owe something for the services, but that he did not owe as much as Hebb claimed. It was therefore an admission of a present subsisting indebtedness not exceeding $300, and revived the original debt to the extent of that admission, if Rosenbush & Bern-

stein were authorized to make the admission, and if the letter in which it was made was properly admissible in evidence.

The authorities are not in accord as to the power of an attorney to bind his principal by admissions of facts not in dispute, made when no cause is pending. Mechem, in his work on *Agency,* said: "Even though not falling within the admissions which the attorney may make in the progress of the cause, since they were made when no cause was pending or perhaps yet contemplated, statements made by an attorney as an agent in negotiating have been held admissible." But in connection with that statement he referred to the case of *Cassels v. Usry,* 51 Ga. 621, in which the court said: "We do not think that a letter which an attorney may write to the opposite party, and that, too, before suit, and upon which no action on the part of that other party was claimed to have been taken, or any injury thereby accrued to him, can be used as evidence on the trial simply to prove or disprove facts on which the merits of the case rest."

The question undoubtedly is not free from difficulty, and, while, as he stated, there is authority for the statement of the rule by Mechem (*Loomis v. N. Y., N. H. & H. R. Co.,* 159 Mass. 39, 34 N. E. 82; *Logre v. Galveston Elec. Co.* [Tex. Civ. App.] 146 S. W. 303), there is authority to the contrary and, in *Cassels v. Usry,* 51 Ga. 621, as well as in a dissenting opinion in *Loomis v. N. Y., N. H. & H. R. Co., supra,* a different view is strongly urged. In 2 *R. C. L.* 990 it is said: "When employed under a general retainer to prosecute a claim an attorney cannot, in the absence of a reference by his client of the defendant to him for information, bind his client by admissions or advice prejudicial to the client's cause of action"; and in 6 *C. J.* 656 it is stated: "An attorney has no implied power to bind his client by acknowledging a debt. The same is true regarding an acknowledgment to take a case out of the statute of limitations." In *Petch v. Lyon,* 9 Q. B. 147, in a conversation between attorneys concerning dispensing with certain witnesses, plaintiff's attorney said

that the debt was one owing from the late husband of the defendant. In the elaborate argument of the admissibility of that statement there was no contention that if formally made it would not have been admissible, but the contention was that it was inadmissible because made in the course of a mere casual conversation, and that was the conclusion accepted by Lord Denman. In *Pickert v. Hair*, 146 Mass. 1, 15 N. E. 79, 81, the question was whether the admission of a material fact made by plaintiff's attorney at a time when no litigation was pending was admissible in evidence. In denying its admissibility the court said: "The admission was not made by Mr. Thayer for the purpose of dispensing with any rule of practice, or with the proof of any fact in the trial of the action already brought, or in the actions which might be brought in reference to the attached property. It was a conversation relating to a fact in controversy, but not an agreement relating to the management and trial of a suit, or an admission intended to influence the procedure in the pending action, or in any other, if the attachment was not discharged. *Saunders v. McCarthy*, 8 Allen, 42; *Lewis v. Sumner*, 13 Metc. 269; 1 *Greenleaf, Evidence* par. 186; *Petch v. Lyon*, 9 Q. B. 147; *Wagstaff v. Wilson*, 4 Barn. & Adol. 339; *Treadway v. Railroad Co.*, 40 Iowa, 526; *Moulton v. Bowker*, 115 Mass. 36; *Parkins v. Hawkshaw*, 2 Starkie, 239; *Young v. Wright*, 1 Camp. 139; *Watson v. King*, 3 C. B. 608; *Hulin v. Richards*, 2 Car. & K. 216."

The question is finally referable to the law of agency, for apart from his connection with actually existing litigation, an attorney would appear to be a mere agent, and, as a mere agent, his authority to bind his principal by his admissions or statements should depend upon the real or apparent scope of his agency, or, as announced in the *Restatement of the Law of Agency, A. L. I.* secs. 284, 286:

"284. In actions between the principal and third persons, evidence of a statement by an agent is admissible for or against either party for the purpose of proving that such statement was made, if the fact that the statement was made constitutes, or is relevant in the proof of,

one of the ultimate facts required to be established in order to maintain a cause of action or defense."

"286. Statements of an agent to a third person are admissible in evidence to prove the truth of facts asserted in them as though made by the principal, if the agent was authorized to make the statement or was authorized to make, on the principal's behalf, true statements concerning the subject matter."

But in comment to section 284, specific situations in which attorneys are authorized to make such admissions even in respect to pending litigation are definitely excluded from the scope of that Restatement. See, also, *Meginnes v. McChesney*, 179 Iowa, 563, 160 N. W. 50. There are other cases dealing with the question, but these sufficiently expose the elements involved in its consideration. So far as any general conclusion may be deduced from these, it is that an attorney employed without reference to pending litigation is but an agent, and that his authority to bind his principal by his admissions is not affected by the fact that he is an attorney at law, except in so far as that fact may reflect upon the apparent scope of the agency. If the admission is clearly within the scope of his agency, express or implied, he has the same authority to bind his client as any other agent. In considering the existence and extent of his authority, the purpose for which he was employed, whether the admissions were relevant to and necessarily involved in negotiations concerning that purpose, whether they related to a disputed fact relevant and material to the negotiations, whether they were casual, mere loose talk, or intended to influence the negotiations, the course or the procedure of litigation, are all factors to be considered, none of which is necessarily conclusive, but any of which may be under appropriate facts and circumstances.

Turning to the immediate question, it appears (1) that a collection agency acting for Hebb wrote Brown demanding that he pay $1,500 for certain services; (2) that Brown referred that letter to his attorneys; (3) that they replied offering $300 by way of compromise; (4) that

nearly two years later Hebb's attorneys wrote Brown, who again referred the letter to the same attorneys, who (5) replied by quoting their first letter and adding that "Mr. Brown is ready and willing to pay that amount now, and he informs me that his information is the offer is a very liberal one for the services rendered." It is apparent from these admitted facts that Rosenbush & Bernstein were retained generally to represent Brown as to that claim; that acting for him they admitted (a) that services had been rendered; (b) that they were worth something, but (c) asserted that they were not worth what Hebb claimed. In those admissions they removed from the field of dispute the fact that services had been rendered, leaving only the question of value. Such an admission would clearly seem to be within the obvious and apparent scope of the agency, formally made, and admissible.

The remaining question is whether, being otherwise admissible, they were nevertheless inadmissible because included in a letter which was on its face an attempt to compromise the claim.

It has long been the law in this state that an offer of compromise is not admissible in evidence as an admission that a debt is due and owing. *Kalus v. Bass*, 122 Md. 467, 89 A. 731; *Meyer v. Frenkil*, 116 Md. 411, 82 A. 208; *Biggs v. Langhammer*, 103 Md. 94, 63 A. 198; 22 *C. J.* 308; *Jones on Evidence*, sec. 291. But while under that rule the mere fact that an offer of compromise has been made is not admissible to prove that the defendant admitted liability, nevertheless admissions of particular facts independent of the offer may be received as evidence tending to establish such facts, even though the admissions may have accompanied the offer of compromise, unless they are so integrated therewith as to be inseparable from it, or unless it appears that they were made as a concession to induce a compromise, or are stated to be made without prejudice. *Jones on Evidence*, sec. 291; 22 *C. J.* 314; *Kalus v. Bass, supra; Biggs v. Langhammer, supra; Meyer v. Frenkil, supra.*

The natural implication of the statement "Mr. Brown is ready and willing to pay that amount," meaning $300, "now," is that Brown renewed his offer of compromise, but, when he added "he informs me that his information is the offer is a very liberal one for the services rendered," he announced an independent fact, not as a concession, for the fact that services had been rendered was not disputed, but as an admission made *eo animo* of a fact (*Dunlap v. Montana-Tonopah Mining Co.* [C. C.] 192 Fed. 714, Id. [C. C. A.] 196 Fed. 612), which was wholly independent of the offer of compromise, although it was connected with the subject matter of the controversy (22. *C. J.* 315).

With that admission in the case, there was evidence of a new promise at least legally sufficient to take the case to the court sitting as a jury, and defendant's demurrer prayer was properly refused, and, since there was no prayer submitted by the defendant limiting the amount recoverable to that admitted by the defendant, we find no error in the rulings involved in the fourth exception, and the judgment will be affirmed.

*Judgment affirmed, with costs.*