490 A.2d 271

## MITCHELL PROPERTIES, INC.
### v.
## REAL ESTATE TITLE COMPANY, INC.

## MITCHELL PROPERTIES, INC.
### v.
### Stanley GREENBLATT, et al.

Nos. 822 and 858, Sept. Term, 1984.

Court of Special Appeals of Maryland.

April 9, 1985.

474

476

Shepard A. Hoffman (Peter Angelos and Gary J. Ignatowski on the brief), Lutherville, for appellant.

John F. Simanski, Jr., Baltimore, for appellees, Marcus.

Howard S. Klein, Towson (Jonathan Azrael, Towson, on the brief) for appellees, Greenblatt, et al.

Argued before BISHOP, ADKINS and ROSALYN B. BELL, JJ.

ROSALYN B. BELL, Judge.

This appeal involves two cases which have been consolidated for our review.

The dispute out of which these actions arose concerned a real estate broker's commission on the sale of real property. Initially, the owners (the Marcuses) advertised their property for sale or lease. During this time an agent of Mitchell Properties, Inc., a real estate broker, contacted the owners and obtained permission to show the property. Mitchell alleges that its agent arranged for Edward Butler to inspect the property and, through the efforts of that agent, Butler ultimately became the purchaser.

Subsequent to the contacts with Mitchell, the Marcuses entered into a written agency agreement with another real estate broker trading as Chas. A. Greenblatt. Under this agreement, Greenblatt had the exclusive right, with two qualifications not here pertinent, to sell the property.

On July 23, 1981, Greenblatt negotiated a contract for the sale of the Marcuses' property with Edward Butler. At settlement on January 11, 1982, both Greenblatt and Mitchell Properties, Inc., claimed they were entitled to the real

estate commission for the sale of this property. The settlement officer, Real Estate Title Company, Inc., placed the disputed commission of $20,075 in escrow.

Mitchell Properties sued Greenblatt and the Marcuses in the Circuit Court for Baltimore City, claiming that it had procured the buyer for the Marcuses' property. (the Mitchell suit). Greenblatt filed a counter-claim against Mitchell, which asserted that it had obtained the buyer and earned the commission. The Marcuses filed a third-party claim against Butler seeking indemnification for any judgment rendered against them. Their claim was based upon Butler's representation in the contract that "Buyer warrants that he has dealt with no other broker...."

Real Estate Title Company, Inc., filed its action in the Circuit Court for Baltimore City in interpleader against Mitchell Properties, Greenblatt and the Marcuses.[1] (the Title Company suit). The company sought to have the funds it placed in escrow at settlement held in the court registry pending resolution of the dispute over the broker's commission. The court directed that the title company invest the funds. Pursuant to this order, the company provided the clerk with documentation concerning the investment as well as a passbook to the account.

### Settlement in the Mitchell Suit

On October 21, 1983, counsel for the parties to the Mitchell suit entered a settlement order with the court which provided:

"The parties agree that if costs and damages have not been paid within thirty (30) days from today's date judgment will be entered for Plaintiff against Alan Greenblatt and Defendants Marcus for $9,333 [and] against 3rd party Butler for $4,667."

Several days later Mitchell Properties moved to vacate the settlement asserting that the manner by which it was to

---

1. Butler was not made a party to this suit.

be paid the $14,000 was contrary to the tentative agreement reached by the parties the day before settlement. At the hearing, Mitchell also contended that its attorney did not have the authority to sign the settlement order on its behalf. The court made the following findings of fact based upon arguments of counsel:

"1) [T]hat after extensive settlement negotiations on the 20th of October, 1983, which included discussions of the payment of $14,000 to Mitchell Properties from an escrow account, that the matters were not formalized ... because Mr. Butler, one of the defendants, had to approve the settlement.

"2) Negotiations were resumed ... the next day, with all parties and counsel present ... The original terms of the payment of $14,000 to be received by Mitchell Properties, Inc. remained the same, although who was to pay it was changed with Butler contributing $4,667 direct to Marcus and Greenblatt, with Marcus and Greenblatt paying $14,-000 to Mitchell.

"3) At some point during negotiations Butler requested a modification, and he desired to pay the sum of $4,667.00 direct to Mitchell and not to Marcus and Greenblatt...

"4) [T]he parties to the action were left behind in the law office, and the attorneys all went over to ... [the court] ... Settlement proceedings were entered ... with all counsel signing on behalf of their clients. Then they went back and rejoined their parties for the purpose of hammering out the remaining terms of a written settlement agreement.

"5) [A]fter all the parties had agreed to the final language of the mutual release, ... the President of Mitchell Properties, and his counsel requested a private meeting with the Third Party Defendant, Butler, and his counsel. It was as a result of this meeting that problems arose which has resulted in the present motion before the Court."

The court made no finding concerning whether Mitchell's attorney had the authority to bind his client to the settle-

ment order. It denied the motion to vacate the settlement stating, "The only change to the agreement ... when counsel went before ... [the court], was the change to whom Butler was to pay the money. The end result is the same—Mitchell Properties received $14,000...." [2]

Mitchell moved for reconsideration of the denial of its prior motion and raised no new issues. The court summarily denied this motion and, on April 27, 1984, entered judgment in accordance with the settlement order of October 21. The docket in the Mitchell suit reflects that this order was entered as the "Final Order of Court."

### Hearing and Order in the Title Company Suit

On the same day judgment was entered on the settlement order in the Mitchell suit, a hearing was held in the Title Company suit on Greenblatt's motion to compel payment of moneys held pursuant to court order, which Mitchell opposed. The court directed that all funds held pursuant to its prior order be disbursed as follows:

1. Mitchell to receive the sum of $9,330 [3] in satisfaction of the obligation of Greenblatt and the Marcuses under the settlement order in the Mitchell suit.

2. Payment to be without prejudice to the rights of Mitchell against Butler under the aforesaid settlement order.

3. Greenblatt to receive the balance of the moneys.

4. One appeal bond to apply to appeals in both this case and the Mitchell suit.

---

**2.** At oral argument in this appeal, Mitchell asserted that it was dissatisfied with the order approved by the court, because it would not receive full payment from the funds escrowed in the Title Company suit. Under the settlement order, it was only entitled to $9,333 from Greenblatt and the Marcuses, which was in escrow; it would have to go after Butler individually for the remaining $4,667.

**3.** We note that the settlement order provided that these parties would pay $9,333 to Mitchell.

Mitchell appeals the judgments in both cases and raises these questions:

1. Did the trial court abuse its discretion by denying appellant's requests for a court reporter, for the opportunity to present testimony and evidence, and for a continuance?

2. Should the judgment of the trial court be vacated because it was entered pursuant to a settlement agreement which was enforced after the court erroneously refused to grant the motion to vacate the settlement order?

Additionally, appellees Greenblatt and the Marcuses move to dismiss the appeal in the Mitchell suit because it was not timely filed.

Since we will dismiss this appeal, as premature, we do not decide the questions raised by appellant. *Eastgate Associates v. Apper*, 276 Md. 698, 704, 350 A.2d 661 (1976). For the guidance of the trial court on remand, however, we will discuss the applicable law concerning the authority counsel must possess to settle a client's claim. *Hawkins v. GMAC*, 250 Md. 146, 148, 242 A.2d 120 (1967).

We first address appellee's motion to dismiss the appeal as filed too late.

## MOTION TO DISMISS

Appellees contend that the court's denial of the motion to vacate the settlement order on January 3, 1984, (January order), was a final appealable order. They further assert that the court's denial of the motion to reconsider its prior ruling on April 6, 1984, (April order), was also a final appealable order. Appellees conclude that, since appellant did not note this appeal until May 23, 1984, which was more than thirty days after the entry of both the January order

and the April order, the appeal in the Mitchell suit should be dismissed pursuant to Md. Rule 1012 a.[4]

 To determine whether the orders are in fact final for purposes of appeal, we will discuss the nature of a final judgment and then apply these principles to each of the orders, including the settlement order. Appellee's concede, and we agree, that a settlement order is "consensual and inherently nonappealable." Nevertheless, we will explore the characteristics of a settlement order to place the court's denial of the motions relating to it in perspective and to provide guidance to the court on remand.

 Preliminarily, we note that, with certain exceptions not here applicable, this Court only has jurisdiction over appeals from final judgments. Md.Cts. & Jud.Proc.Code Ann., § 12–301 (1984 Repl. Vol.); *Biro v. Schombert,* 285 Md. 290, 294, 402 A.2d 71 (1979); *Eastgate Associates v. Apper,* 276 Md. at 701, 350 A.2d 661. A final judgment from which an appeal may be taken is defined as "one which settles the rights of the parties or concludes the cause," *In Re: Special Investigation, No. 231,* 295 Md. 366, 370, 455 A.2d 442 (1983); *Brooks v. Ford Motor Credit Co.,* 261 Md. 278, 280, 274 A.2d 345 (1971), and has been entered on the docket. *Eastgate Associates v. Apper, supra; Happy 40, Inc. v. Miller,* 57 Md.App. 589, 471 A.2d 333 (1984).

 Although a settlement order resembles a final judgment, it is not the same. A settlement agreement is a contract which the parties enter into "for the settlement of a previously existing claim by a substituted performance." 6 Corbin on Contracts, § 1278 at 124 (1962); *Clark v. Elza,* 286 Md. 208, 406 A.2d 922 (1979). When this agreement is entered with the court, it is termed a settlement order; however, it is not a court order. Rather, it is a compromise between the parties, which they submit to the court to stay the proceedings in the case. *Clark v. Elza, supra; East-*

---

**4.** Md. Rule 1012 a provides: "When an appeal to this Court is permitted by law, the order for appeal shall be filed within thirty days from the date of the judgment appealed from..."

*ern Environ. v. Industrial Park*, 45 Md.App. 512, 413 A.2d 1355 (1980).

 If counsel submit the proceedings to the court on behalf of their clients, they must have express authority to settle their clients' claims. *Accrocco v. Splawn*, 264 Md. 527, 533, 287 A.2d 275 (1972); *Posko v. Climatic Control Corp.*, 198 Md. 578, 583, 84 A.2d 906 (1951); *Kinkaid v. Cessna*, 49 Md.App. 18, 22, 430 A.2d 88 (1981). There is a *prima facie* presumption in Maryland "that an attorney has authority to bind his client by his actions relating to the conduct of litigation." *Kinkaid v. Cessna, supra.* This jurisdiction, however, has declined to extend that presumption to the settlement of a lawsuit. *Id.* Moreover, the party seeking to enforce a settlement order must prove: (1) that the other party's counsel acted with the authority of his client; and (2) that such authority expressly extended to the settlement of the claim. *Kinkaid v. Cessna*, 49 Md. App. at 23, 430 A.2d 88.

 A settlement order is presumed to be an executory accord, *Clark v. Elza, supra; Eastern Environ. v. Industrial Park, supra,* which is defined as "an agreement for the future discharge of an existing claim by a substituted performance." *Clark v. Elza*, 286 Md. at 214, 406 A.2d 922, quoting 6 Corbin on Contracts, § 1268 at 71. Until the agreement is performed, it holds the original claim in abeyance. *Id.* In any event, it remains a binding contract which can be enforced against a defaulting party. *Id.; Eastern Environ. v. Industrial Park*, 45 Md.App. at 517, 413 A.2d 1355. If the court reduces the settlement order to a money judgment, it becomes a final judgment to the extent the underlying agreement address the respective claims of the parties. *See Chertkof v. Weiskittel Co.*, 251 Md. 544, 248 A.2d 373 (1967).

## The January Order

 Appellees maintain that the court's January order denying the motion to vacate was an appealable order

because it was similar to the denials of motions to vacate in *Grantham v. Prince George's County*, 251 Md. 28, 246 A.2d 548 (1967) and *J.C. Penney Co., Inc. v. Harker*, 23 Md.App. 121, 326 A.2d 228 (1974). We disagree.

In both *Grantham, supra,* and in *J.C. Penney Co., Inc., supra,* the parties appealed from denials of motions to vacate final judgments. The denials of the motions to vacate were not themselves appealable. Rather, the cases had become ripe for appeal because the courts had entered final judgments, which they then refused to vacate.

In the instant case, the underlying order was not a final judgment, but only a consensual agreement. The court's denial of the motion to vacate the order simply upheld the validity of the parties' agreement—it did not constitute a final judgment.

### *The April Order*

■ Appellees further contend that the. court's April order denying the motion to reconsider the validity of the settlement order was a "second" appealable order.

■ A second appealable final order is a legal impossibility—once there is a final order the case is concluded. *In Re: Special Investigation, No. 231, supra.* Moreover, the April order was not final for the same reasons as the January order. Prior to the entry of judgment on the settlement order, there was no final order from which an appeal could be taken. Neither the settlement order, the denial of the motion to vacate the settlement nor the denial of the motion to reconsider were final judgments for purposes of appeal. Hence, the time for filing an appeal did not begin to run. We, therefore, deny appellees' motion to dismiss.

### THE APPEAL

We now turn to the question of whether entry of judgment on the settlement order in the Mitchell suit constituted a final order from which an appeal will lie, and whether there was a final judgment in the Title Company suit.

### The Mitchell Suit Judgment

█ When the parties entered into the settlement agreement, they apparently intended to settle their respective claims, as evidenced by a mutual release which they drafted but never signed. The release provided that they would dismiss with prejudice any claims, counterclaims, or third-party claims that had been filed in the action. The settlement order that was reduced to judgment, however, addressed only appellant's claim against appellees. It did not mention either appellee Greenblatt's counterclaim against appellant, or appellees, the Marcuses', third-party claim against Butler. The record shows that these claims were neither dismissed nor adjudicated.

Because there is an undecided counterclaim and third-party claim in this action, we hold that the appeal with regard to the Mitchell suit is premature. *See Brooks v. Ford Motor Credit Co., supra; Schafer v. Bernstein,* 256 Md. 218, 260 A.2d 57 (1969); *see also, Happy 40, Inc. v. Miller, supra.*

### The Title Company Suit Judgment

█ The complainant in an action for interpleader is a disinterested stakeholder who seeks to have the court determine which of two parties claiming the same debt is entitled to it. The procedure allows the party holding the funds to avoid "double vexation in respect of one liability." *Rockwell v. Carroll Printing & Publishing Co., Inc.,* 191 Md. 542, 547, 62 A.2d 545 (1948); *Steffey, Inc. v. American Bank Stationary Company,* 161 Md. 124, 155 A. 306 (1931).

In this case, the title company interpleaded appellant and appellees to ascertain which of them was entitled to the disputed commission placed in escrow at settlement. At the same time, appellant and appellees were litigating that issue between themselves in the Mitchell suit. The court rendered a final judgment in the Title Company suit, because judgment had been entered on the settlement order in the Mitchell suit. In so doing, the court erred.

■ The error stemmed from the fact that the court used the judgment in the Mitchell suit as if it were final. The doctrine of *res judicata* bars relitigation of a claim that has been litigated previously in another action between the same parties; it applies, however, only when there has been a final judgment in the prior case. *Smith v. Gray Concrete Pipe Co.*, 267 Md. 149, 156, 297 A.2d 721 (1972); *Davis v. Frederick County*, 25 Md.App. 68, 74, 334 A.2d 165 (1975).

■ In this instance, there was no final judgment in the Mitchell suit. Thus, the entry of a final order in the Title Company suit based on the non-final order in the Mitchell suit was erroneous. Because the disputed funds which form the basis of the judgment in the interpleader action are also the subject of the Mitchell suit, resolution of the Title Company suit depends upon the outcome of that suit.

Based on these conclusions, we deny the motion to dismiss filed by appellees; vacate the judgment in the Title Company suit; and dismiss the appeal.

APPEAL DISMISSED IN CASE NO. 858; JUDGMENT IN CASE NO. 822 VACATED AND CASE REMANDED; MOTION OF APPELLEE TO DISMISS DENIED. COSTS TO BE PAID EQUALLY BY APPELLANT AND APPELLEES.